James Bopp, Jr. (District of D.C. Bar ID: CO0041)
Joseph D. Maughon*
**THE BOPP LAW FIRM, P.C.**
*The National Building*
1 South Sixth Street
Terre Haute, IN 47807-3510
Tel: (812) 232-2434
Fax: (812) 235-3685
Email: jboppjr@aol.com
        jmaughon@bopplaw.com

*Attorneys for Non-Party National Right to Life Committee, Inc.*
**Pro hac vice** application forthcoming

Case: 1:25−mc−00159
Assigned To : Leon, Richard J.
Assign. Date : 10/23/2025
Description: Misc.

# UNITED STATES DISTRICT COURT

## DISTRICT OF COLUMBIA

| | |
|---|---|
| *In re:* Subpoena Served on National Right to Life Committee, Inc.<br><br>**LOURDES MATSUMOTO, NORTHWEST ABORTION ACCESS FUND,** and **INDIGENOUS IDAHO ALLIANCE,**<br><br>*Plaintiffs*,<br><br>v.<br><br>**RAÚL LABRADOR**, in his official capacity as in his capacity as the Attorney General for the State of Idaho,<br><br>*Defendant*. | Case No.: _____<br><br>*Underlying Action*<br><br>In the United States District Court for the District of Idaho<br><br>Case No. 1:23-cv-00323-DKG<br><br>**Motion of Non-Party National Right to Life Committee, Inc., to Quash Subpoena and Memorandum in Support of Same** |

RECEIVED

OCT 23 2025

Clerk, U.S. District & Bankruptcy
Court for the District of Columbia

# Motion of Non-Party National Right to Life Committee, Inc., to Quash Subpoena

On September 12, 2025, National Right to Life Committee, Inc. ("**NRLC**"), a stranger to the underlying litigation, received a subpoena duces tecum ("**NRLC Subpoena**") from its policy opponent, demanding NRLC's strategic, confidential documents that have nothing to do with the litigation.[1] The NRLC Subpoena was issued on behalf of NRLC policy-opponent Plaintiff Northwest Abortion Access Fund ("**NWAAF**") as well as the other Plaintiffs, Lourdes Matsumoto and Indigenous Idaho Alliance (collectively, "**Challengers**"). Ex. 1. Pursuant to Federal Rule of Civil Procedure 45(d)(2)(B), NRLC timely objected to the NRLC Subpoena on the basis of First Amendment privilege, relevancy, and overbreadth and undue burden on October 2, 2025.[2] Maughon Decl., ¶ 5. As a result of these issues, fatal to the NRLC Subpoena, this Court should quash same.

Accordingly, pursuant to Federal Rule of Civil Procedure 45(d)(3), NRLC now timely moves and respectfully requests that this Court quash the NRLC Subpoena[3] because any existing documents that would be responsive are exempted from disclosure by the United States Constitution and federal law. Specifically, they are protected by the First Amendment.

---

[1]Compliance with the NRLC Subpoena was required in this District.

[2]Counsel for Challengers consented to providing a 14-day extension of time for NRLC to provide its response to the subpoenas. Declaration of Joseph D. Maughon, ¶¶ 2–3 ("**Maughon Decl.**").

[3] If filed within a subpoena's compliance period, a motion to quash is timely. *Wiand v. Intermountain Precious Metals LLC*, No. 1:24-mc-00086-AKB, 2024 U.S. Dist. LEXIS 139214, at *6 (D. Idaho Aug. 5, 2024). In addition to Plaintiffs' initial 14-day extension of the deadline specified in the subpoenas, *supra* n.2, which extended the deadline to October 16, 2025, Plaintiffs agreed to an additional seven-day extension, up to and including October 23, 2025. Maughon Decl., ¶¶ 6–8.

Furthermore, the Requests are not even relevant and are overbroad, imposing an undue burden and eschewing the requirement to avoid burdening a nonparty except when absolutely necessary. As further explained in the accompanying memorandum in support of this Motion and supported by the exhibits and declaration attached thereto, these protections demand that the NRLC Subpoena be quashed. Accordingly, this Court should grant this Motion.

## L.R. 7(m) Statement

Pursuant to L.R. 7(m), counsel for NRLC advises that said counsel conferred via email with counsel for Challengers to determine whether they would oppose the Motion, in addition to earlier conferrals concerning NRLC's objections to the NRLC Subpoena. While Challengers proposed to narrow the subpoena, that proposal ultimately did not resolve the issue, nor was an alternative agreement reached. Challengers advised that they oppose the Motion.

Dated: October 23, 2025

Respectfully submitted,

/s/ James Bopp, Jr.
James Bopp, Jr. (District of D.C. Bar ID: CO0041)
Joseph D. Maughon*
**THE BOPP LAW FIRM, PC**
*The National Building*
1 South Sixth Street
Terre Haute, IN 47807-3510
Tel: (812) 232-2434
Fax: (812) 235-3685
Email: jboppjr@aol.com
         jmaughon@bopplaw.com

*Attorneys for Non-Party National Right to Life Committee, Inc.*
**Pro hac vice* application forthcoming

# Memorandum of Points and Authorities

## Procedural History and Nature of the Case

On July 11, 2023, Challengers filed their Complaint, suing Idaho Attorney General Raúl Labrador ("**Idaho**") to challenge Idaho Code § 18-623 ("**abortion trafficking law**"), a law outlawing abortion trafficking, first introduced in the Idaho Legislature on February 7, 2023 (Idaho House Bill 98 ("**H.B. 98**")), and later re-introduced as House Bill 242 ("**H.B. 242**"). Compl., *Matsumoto*, No. 1:23-cv-00323-DKG, D. 1, ¶ 11 (Ex. 2) ("**Complaint**"). Challengers alleged that the law (**1**) violated due process as a result of alleged vagueness (Claim I), *id.* at ¶¶ 90–101, (2) burdens the rights to interstate and intrastate travel (Claims II and III), *id.* at ¶¶ 102–121, and (3) infringes on First Amendment rights of association and expression (Claim IV), *id.* at ¶¶ 122–132.

Following motions practice on Challengers' motion for preliminary injunction and Idaho's motion to dismiss, the district court granted in part and denied in part the motion to dismiss and granted the preliminary injunction. *Matsumoto v. Labrador*, 122 F.4th 787, 796 (9th Cir. 2024).[4] In granting the preliminary injunction, the district court found that Challengers had demonstrated "a likelihood of success on the merits of their First Amendment and void-for-vagueness claims." *Id.*

Idaho appealed. *Id.* at 796. The Ninth Circuit Court of Appeals reversed the district court with respect to all findings except its finding that "Challengers are likely to succeed in their claim that [the abortion trafficking law's] 'recruiting' prong is an unconstitutional infringement

---

[4]The district court dismissed the intrastate travel claim. The appellate court declined to exercise jurisdiction over that ruling, *id.* at 796 n.6, so that dismissal remains undisturbed.

on their protected speech." *Id.* at 816. Accordingly, it affirmed the district court's preliminary injunction only with respect to its prohibition on enforcement of that prong, while also finding Challengers unlikely "to succeed on the merits of their remaining claims—the void for-vagueness and association claims, as well as the other First Amendment claims with respect to the remainder of the statute[.]" *Id.*

Presently, the district court has modified its preliminary injunction accordingly (Order Modifying Preliminary Injunction, D. 58, *Matsumoto*, No. 1:23-cv-00323-DKG); Idaho has filed its Answer (D. 65, *Matsumoto*, No. 1:23-cv-00323-DKG), and a Scheduling Order has been entered (D. 64, *Matsumoto*, No. 1:23-cv-00323-DKG). Because the intrastate travel claim was dismissed, the remaining issues are those raised by the vagueness claim, the interstate travel claim, and the First Amendment claim.

These issues, of course, have absolutely nothing to do with NRLC, a stranger to the *Matsumoto* case. Nonetheless, NRLC's policy opponent has attempted to drag NRLC into the case in order to comb through its internal documents and confidential communications—documents that, as explained below, lie at the very heart of the First Amendment. Specifically, the NRLC Subpoena demanded production of the following from NRLC (collectively, the "**Requests**"):

> 1. All documents sent to and received from Legislators concerning H.B. 242 and H.B. 98.
> 2. All documents relating to H.B. 242 and H.B. 98, including any meeting notes, memoranda, or minutes concerning H.B. 242 and H.B. 98.
> 3. All documents sent to and received from Right to Life of Idaho concerning H.B. 242 and H.B. 98.
> 4. All documents including drafts, relating to Abortion Trafficking Legislation.[5]

_____

[5]The NRLC Subpoena defines Abortion Trafficking Legislation as any legislation "that purports to restrict, regulate, or criminalize adults assisting in the movement of minors or young

5. All materials submitted to, received from, or exchanged with any Idaho state agency of [sic] government employee concerning H.B. 242 and H.B. 98.

NRLC Subpoena, Ex. 1, 8.

Following Challengers' receipt of NRLC's formal letter of objections to the NRLC subpoena, counsel for Challengers proposed narrowing the Requests to require only two categories of documents ("**Narrowed Requests**"), specifically:

> 1. Communications with Idaho legislators or legislative staff concerning H.B. 242 or H.B. 98, including any attachments, talking points, or materials prepared *for dissemination to* legislators; and
> 2. Documents created for the purpose of communicating with legislators about those "abortion trafficking" bills like H.B. 242 and H.B. 98—such as drafts of model language, position summaries, or legislative fact sheets—*to the extent such materials were shared externally or intended for legislative audiences.*

Ex. 3 ("**Narrowing Letter**"), 1 (emphasis in original). The Narrowed Requests are accordingly the NRLC Subpoena's operative requests.

This Court should quash the NRLC Subpoena for the following reasons.

## I. First Amendment privilege exempts the documents from disclosure.

### A. The First Amendment protects documents whose release would have a chilling effect.

Fundamentally and most importantly, "the subject matter of [the Narrowed Requests] represents the very heart of the organism which the first amendment was intended to nurture and protect: political expression and association concerning" core political issues. *Fed. Election Com. v. Machinists Non-Partisan Political League*, 655 F.2d 380, 388 (D.C. Cir. 1981). Compliance with the Narrowed Requests would therefore have a "deterrent effect on the exercise of [NRLC's] First Amendment rights," and NRLC is accordingly exempted from disclosing the

---

people across city, county, or state lines for purposes of obtaining an abortion, or for purposes related to facilitating, assisting, or supporting an abortion[.]" Ex. 1, 7.

documents sought in the Narrowed Requests. *See Perry v. Schwarzenegger*, 591 F.3d 1147, 1160 (9th Cir. 2010); *see also id.* at 1160 n.5 ("This privilege applies to discovery orders even if all of the litigants are private entities" (quotation marks and citation omitted)). "[I]t is crucial to remember that we are considering the essence of First Amendment freedoms—the freedom to [advocate] policies and programs [of] which one is [in favor], and the freedom to organize, raise money, and associate with other like-minded persons so as to effectively convey the message[.]" *Int'l Action Ctr. v. United States*, 207 F.R.D. 1, 3 (D.D.C. 2002).

There can be no doubt that NRLC's advocacy for legal change relating to abortion is at the core of these First Amendment protections. NRLC, a federation of 50 state affiliates and over 3,000 local chapters, is the nation's oldest and largest pro-life organization. *About NRLC*, NATIONAL RIGHT TO LIFE, https://nrlc.org/about (last visited October 21, 2025). It works through education and legislation to achieve its purpose of advancing the rights of the unborn.[6] *Id.*

NWAAF, meanwhile, is primarily and wholeheartedly aimed at goals in direct opposition to these, according to its own words in the underlying litigation. It "is an abortion fund" dedicated to helping people, even minors, "access abortion care . . . , including by transporting them across state lines." Compl., Ex. 2, ¶ 3. It uses its funds to promote abortion and to "provid[e] monies and transportation (and other support) for pregnant minors traveling within and outside of Idaho to access out-of-state legal health care services, including abortion." *Id.* at ¶ 4. In short, it is the polar opposite and stark opponent of NRLC. As explained further below,

---

[6] For context, NRLC notes that Challengers also subpoenaed Right to Life of Idaho, Inc., NRLC's Idaho affiliate, with nearly identical requests. That subpoena is not at issue in this motion since the "court for the district where compliance is required" for that subpoena is the United States District Court for the District of Idaho. *See* Fed. R. Civ. P. 45(d)(3)(A).

this makes its gambit to peruse NRLC's documents even more suspect under the First Amendment.

The Supreme Court has been abundantly clear that "communication concerning political change" is "core political speech" and that "First Amendment protection . . . is at its zenith" when it comes to such communications. *Buckley v. Am. Constitutional Law Found.*, 525 U.S. 182, 186–87 (1999) (internal quotation marks and citations omitted); *McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 347, 115 S. Ct. 1511, 1519 (1995) (noting that "core political speech" is not limited to speech about candidates, but extends to speech related to political issues); *see also, e.g.*, *Speech First, Inc. v. Cartwright*, 32 F.4th 1110, 1125 (11th Cir. 2022) (noting that advocacy against abortion constitutes core political speech).

Because "courts have long recognized the sensitivity of information related to" such expression, they have found that the First Amendment demands the protection thereof. *Action Ctr.*, 207 F.R.D. at 3. This sensitivity must be zealous in the discovery context, as "the threat to First Amendment rights may be more severe in discovery than in other areas because a party may try to gain advantage by probing into areas an individual or a group wants to keep confidential." *Wyoming v. United States Dep't of Agric.*, 208 F.R.D. 449, 454 (D.D.C. 2002) (citation omitted). Specifically, courts have ruled that "membership and volunteer lists, contributor lists, and *past political activities of plaintiffs*[7] *and of those persons with whom they have been affiliated*" are protected. *Id.* (emphasis added). "Consequently, discovery requests . . . that seek such information" generally should "not be allowed." *Action Ctr.*, 207 F.R.D. at 3. Only requests that can satisfy the demanding balancing test required for such information ("**Balancing Test**") may

---

[7] These protections are even greater when documents are sought from non-parties. *Infra* Part I.E.2.b.

be enforced. *Id.* at 4 (quoting *Black Panther Party v. Smith*, 661 F.2d 1243, 1266, 1268 (D.C. Cir. 1981), *vacated as moot sub nom. Moore v. Black Panther Party*, 458 U.S. 1118 (1982));[8] *see also infra* Part I.E (describing Balancing Test).

The First Amendment privilege held by organizations that engage in such speech has long been recognized by the Supreme Court. In the seminal case of *NAACP v. Alabama ex rel. Patterson*, 357 U.S. 449 (1958), the Court ruled unanimously that a state's demand for the NAACP to produce its membership rolls in order to do business in the state infringed on the organization's (and its members') First Amendment rights of free speech and association. The Court stated that the privacy rights springing from such association are "indispensable to preservation of freedom of association, particularly where a group espouses dissident beliefs." *NAACP*, 357 U.S. at 462. Importantly, the Court ruled not only that the Alabama *law* infringed on the First Amendment, but that the Alabama court's "*production order*" did so as well. *Id.* at 463 (emphasis added). The Court found that that order, which required the NAACP to produce its membership lists to the state in order for the state to prepare for a hearing, represented "the initial exertion of state power" that allowed the "private action" to "take[] hold" and create a "repressive effect." *Id.* at 453, 463. So First Amendment privilege must be considered whenever judicial power is exerted to compel production of documents that lie at the heart of the First Amendment and whose disclosure may have repressive effects on First Amendment association or expression.

---

[8] As *International Action Center* notes, although *Black Panther* was vacated, nothing suggests that the D.C. Court of Appeals has "rejected or abandoned" its reasoning or analysis. 207 F.R.D. at 3 n.6 (citing *Black Panther*, 458 U.S. 1118). "Indeed, it has been cited subsequently by the Circuit in a unanimous *per curiam* opinion in *Steffan v. Cheney*, 287 U.S. App. D.C. 143, 920 F.2d 74 (1990), as well as in many other cases from outside this Circuit." *Id.* (citation to record omitted).

The Supreme Court has not wavered. Quite the opposite—it has emphasized with increasing clarity that, in order for First Amendment privilege to apply, all that is required is *potential* danger to First Amendment expression and association. For example, in 2021, the Court struck down a California law requiring certain charitable organizations to file copies of an IRS form listing the names and addresses of major donors, declaring that the law "creates an unnecessary risk of chilling in violation of the First Amendment." *Ams. for Prosperity Found. v. Bonta*, 594 U.S. 595, 602, 616 (2021) (quotation marks and citation omitted). The Court reiterated what it had said shortly following *NAACP* in 1960, that "'identification and fear of reprisal *might* deter perfectly peaceful discussions of public matters of importance,'" emphasizing the fact that, per *NAACP*, all that is required for the First Amendment's protections to apply is "'state action which *may* have the effect of curtailing the freedom to associate,' . . . and [] the '*possible* deterrent effect' of disclosure." *Id.* (quoting *Talley v. California*, 362 U. S. 60, 65 (1960); *NAACP*, 357 U. S. at 460–61) (emphases added by *Ams. for Prosperity* Court).

Accordingly, it is well-established that (**1**) the "[c]ompelled disclosure of political affiliations" can burden First Amendment rights, in particular the right of association; (**2**) the "[c]ompelled disclosure of political . . . activities can impose" the same effect; and (**3**) such compelled disclosures, indeed, can "impose just as substantial a burden on First Amendment rights as can direct regulation," *LULAC*, 2023 U.S. Dist. LEXIS 179334, at *12 (quoting *AFL-CIO v. FEC*, 333 F.3d 168, 175 (D.C. Cir. 2003)); moreover, (**4**) all that must be shown to trigger First Amendment protection in light of these dangers is a *possibility* of chilling, *Ams. for Prosperity*, 594 U.S. at 616. The Narrowed Requests do not satisfy the high level of scrutiny required for such demands.

**B. Communications and past activities are protected by First Amendment privilege.**

Nor, as the D.C. Circuit Court has indicated, is this privilege limited to membership lists. In *Machinists*, the court considered a subpoena that demanded a non-partisan political organization produce "communications between" the subpoenaed party and "other . . . groups." *Machinists*, 655 F.2d at 384. It found that the demand for these "communications among various groups . . . carrie[d] with it a real potential for chilling the free exercise of political speech and association guarded by the first amendment," *id.* at 388, and thus reversed the lower court's order enforcing the subpoena after concluding that the FEC had not, prior to its demand, made a sufficient showing concerning jurisdictional questions, *id.* at 396–97. This Court, also, has recognized in various opinions that the privilege extends beyond membership lists. *E.g.*, *Wyoming*, 208 F.R.D. at 454–55 (citing *Machinists*, 655 F.2d at 388) (noting, *inter alia*, protection of "internal communications and communications among various groups"); *Action Ctr.*, 207 F.R.D. at 3 (noting protection of "past political activities of plaintiffs and of those persons with whom they have been affiliated").

**C. First Amendment privilege applies in private disputes.**

Nor does the fact that Challengers are private parties alter the conclusion that First Amendment privilege applies. For example, in *Education Finance Council v. Oberg*, over a party's contention that "the First Amendment privilege may not apply in private civil litigation," this Court conducted the First Amendment privilege analysis in a case between private parties. No. 10-mc-0079 (JDB), 2010 U.S. Dist. LEXIS 102221, at *17 n.10 (D.D.C. Mar. 8, 2010) (citations to record omitted) (also favorably noting party's acknowledgment that "*Black Panther* 'appeared to have assumed the issue'"). Indeed, as noted above, *NAACP* made this clear, striking down a *court order* as violative of the First Amendment, rejecting the notion that the "repressive

effect [of] compulsory disclosure" did not follow "from state action but" only "from private community pressures" because the court order itself was the state action. 357 U.S. at 463.

Various additional federal circuit courts have explicitly acknowledged the import of that ruling. For example, the Ninth Circuit notes that the First Amendment privilege applies against discovery orders that require "[d]isclosure[] of political affiliations and activities" *regardless* of whether "all of the litigants are private entities." *Perry*, 591 F.3d at 1160, 1160 n.5 (citing *Buckley v. Valeo*, 424 U.S. 1, 64–65 (1976); other citations omitted). Similarly, the Tenth Circuit notes the privilege's "applicab[ility] in the context of discovery orders, even if all of the litigants are private entities," specifically noting that such orders "provide the requisite governmental action that invokes First Amendment scrutiny." *Grandbouche v. Clancy*, 825 F.2d 1463, 1466 (10th Cir. 1987) (citing *NAACP*, 357 U.S. at 463; *Shelley v. Kraemer*, 334 U.S. 1, 14–15 (1948)).

District courts within the neighboring Fourth Circuit have also recognized that First Amendment privileges apply even in litigation between private parties. One such court has cogently explained, for example, that compelled disclosure of a political committee's internal communications "would cause internal communications, as well as the freedoms of speech and assembly, within and among the membership . . . [to] necessarily be chilled, perhaps to the extreme where no such communications or acknowledgement of assembly can be made in any material form, lest they become subject to legal scrutiny[.]" *Blankenship v. Fox News Network, LLC*, Civil Action No. 2:19-cv-00236, 2020 U.S. Dist. LEXIS 162381, at *15 (S.D. W. Va. Sep. 4, 2020). The *Blankenship* court went on to note that compelled disclosure of

> internal communications concerning . . . campaign strategies, etc. would cause Defendant [] to reassess or even modify how its membership can work, associate, communicate and provide any guidance on campaign strategies. It is not difficult to envision that compelled disclosure would chill membership to Defendant NRSC as

well as would-be members, and to those Defendant NRSC serves, in their manner of association and/or assembly.

*Id.* Similar rulings are common in the Fourth Circuit's district courts in disputes between private parties, from recognition of the First Amendment privilege of citizen environmental groups against being compelled to produce documents when such disclosure could chill association,[9] to this recognition of the reporter's privilege in such private disputes—even as to *nonconfidential* information.[10]

**D. First Amendment privilege protects "external" communications.**

Finally, the First Amendment applies to protect against the release of both "internal and external communications [that] could result in 'chilling the free exercise of political speech and association guarded by the First Amendment.'" *LULAC v. Abbot (In re Subpoenas to Adam Kincaid)*, No. 22-mc-0067-JEB-RMM, 2023 U.S. Dist. LEXIS 163886, at *17 (D.D.C. Aug. 9, 2023) (citing *Machinists*, 655 F.2d at 388)). The D.C. Circuit has long recognized this truth. As noted, *Machinists* concerned a subpoena for "communications between" the subpoenaed party and "other . . . groups" and found that the demand for these "communications among various groups" triggered the First Amendment's protection. *Machinists*, 655 F.2d at 384, 388. It is thus

_____

[9] *E.g.*, *Pulte Home Corp. v. Montgomery Cty. Md.*, No. GJH-14-3955, 2017 U.S. Dist. LEXIS 43153, at *2–3, *9–38 (D. Md. Mar. 24, 2017) (applying in-depth First Amendment privilege analysis to motion to quash subpoenas issued by private entity against private entities); *Marfork Coal Co. v. Smith*, 274 F.R.D. 193, 205–06 (S.D. W. Va. 2011).

[10] *E.g.*, *Stickels v. Gen. Rental Co.*, 750 F. Supp. 729, 732 (E.D. Va. 1990) (adopting "a qualified privilege for nonconfidential information and materials acquired by the press in the course of their newsgathering process"); *Federico v. Lincoln Military Hous., LLC*, No. 2:12-CV-80, 2014 U.S. Dist. LEXIS 112393, at *14 (E.D. Va. Aug. 13, 2014) (applying analysis to "balance the need for information in a given civil case against the First Amendment interests of the press regardless of the confidential nature of the information sought.").

well-established that external communications that satisfy the remaining criteria are protected by First Amendment privilege.

**E. The Balancing Test requires that NRLC be exempted from disclosure.**

Application of the Balancing Test is straightforward. When a person whose records are sought makes a prima facie showing that compelled disclosure would have a "'*possible*' deterrent effect," *Ams. for Prosperity*, 594 U.S. at 616 (quoting *NAACP*, 357 U. S. at 460–61), First Amendment protections are triggered by that "chilling effect," *id.* at 606. "[T]he evidentiary burden [then] shifts to the plaintiffs to demonstrate a sufficient need for the discovery to counterbalance that infringement." *Perry*, 591 F.3d at 1164. Specifically, the discovery proponent must demonstrate (**1**) that the requested "information goes to the 'heart of the lawsuit,'" *Wyoming*, 208 F.R.D. at 455 (quoting *Int'l Union, United Auto., etc. v. Nat'l Right to Work Legal Def. & Educ. Found., Inc.*, 590 F.2d 1139, 1152 (D.C. Cir. 1978)); and (**2**) that it "sought the information through alternative sources or otherwise made reasonable attempts to obtain the information elsewhere." *LULAC*, 2023 U.S. Dist. LEXIS 179334, at *11 (cleaned up) (citing *In re Subpoenas Served on Am. Acad. of Pediatrics*, 2023 U.S. Dist. LEXIS 36237, at *1 (D.D.C. Mar. 3, 2023); other citations omitted).

There can be no mistake that such scrutiny is triggered here. As an advocacy organization whose goals and core identity deeply involves it in one of today's most prevalent and extensive political issues, NRLC easily satisfies the requirements of the First Amendment privilege since compliance with the Narrowed Requests would both deter participation and mute the "exchange [of] ideas and formulat[ion of] strategy and messages" in NRLC. *See Perry*, 591 F.3d at 1162–63. This is particularly true where an actual party (such as the NWAAF) is a "public policy

opponent" of the party from whom discovery is sought. *Apple Inc. v. Match Grp.*, No. 21-mc-80184-YGR (TSH), 2021 U.S. Dist. LEXIS 161373, at *24 (N.D. Cal. Aug. 19, 2021).

Both of the Narrowed Requests seek information about NRLC's political advocacy activities and communications. Indeed, they are in no way attenuated from plainly political-advocacy subject matter, but require production of documents at the heart of NRLC's strategic operations concerning House Bills on abortion and/or similar legislation—i.e., those documents at the core of its mission. They therefore plainly fall afoul of the First Amendment's protections.

**1. There is a prima facie showing of infringement.**

The Balancing Test weighs heavily in favor of quashing the NRLC Subpoena. "It is well established that political groups . . . have First Amendment associational interests implicated by compelled disclosure of their activities[.]" *LULAC*, 2023 U.S. Dist. LEXIS 179334, at *12; *see also Perry*, 591 F.3d at 1163 (noting that where such disclosure directly implicates political speech or association, it is "self-evident [] that important First Amendment interests are implicated by the" discovery). NRLC plainly satisfies the initial hurdle since the Narrowed Requests seek disclosure of NRLC's strategic political advocacy concerning a core political issue and would thus chill NRLC's First Amendment association, expression, and activity.[11]

---

[11] As one court has asked, "Who in their right mind would want to participate in a public advocacy organization, knowing that all their internal communications about strategy, lobbying, planning, and so on, would be turned over to their principal opponent? Once people realize that the [organization's] documents and internal communications have been turned over to [the opponent], no one will want to join or remain." *Apple Inc.*, 2021 U.S. Dist. LEXIS 161373, at *24. Similarly, "it is common sense that forcing [NRLC] to produce [] [external communications concerning legislation] will chill the willingness of [its] members" and those with whom they associate "to have candid communications with each other about these subjects." *See LeGrand v. Abbott Labs.*, No. 22-cv-05815-TSH, 2024 U.S. Dist. LEXIS 184790, at *2–3 (N.D. Cal. Oct. 9, 2024).

**2. Challengers cannot satisfy their burden.**

Because NRLC plainly satisfies the first part of the Balancing Test, the burden shifts to Challengers to demonstrate a compelling interest in the documents sought and that the Narrowed Requests are the least restrictive means of obtaining the information, which they cannot do.

**a. The Narrowed Requests are not relevant at all.**

The most glaring and impenetrable barrier for Challengers is the fact that not only do the Narrowed Requests fail to satisfy the "heightened relevance" standard of "going to the heart of the lawsuit," *see Perry*, 591 F.3d at 1164; *Wyoming*, 208 F.R.D. at 455—they are not relevant *at all*. The claims of this case, that the abortion trafficking ban is unconstitutionally vague and violates interstate travel rights and rights of association and expression, have nothing to do with *NRLC's* views, positions, or interpretations of that law. A private entity's understanding of the law does not play a part in judicial construction of the law. *See Dobbs v. Jackson Women's Health Org.*, 597 U.S. 215, 253–54 (2022). The *Dobbs* Court explained, after noting that "arguments based on alleged legislative motives" are "disfavored," that statements made by non-lawmaker *supporters* of a given law are far removed even from that "disfavored" form of "evidence." *Id.* Accordingly, such statements are simply not relevant in cases challenging a law.

This is especially true when such statements are private, in which case they do not evince legislative intent. Legislative history comprises those things which evince "the intent of the entire legislative body." *Castaneda-Gonzalez v. Immigration & Naturalization Serv.*, 564 F.2d 417, 424 (D.C. Cir. 1977); *see also N. Colo. Water Conservancy Dist. v. Fed. Energy Regulatory Com.*, 730 F.2d 1509, 1518–19 (D.C. Cir. 1984) ("Statements in a conference report, because commended to the entire Congress, carry greater weight than comments from floor debates by individual legislators."). That is why the Supreme Court has noted that "floor statements by

**Mem. Supp. Mot. Non-Party National Right
to Life Committee, Inc., to Quash Subpoena** 13

individual legislators rank among the least illuminating forms of legislative history." *NLRB v. SW Gen., Inc.*, 580 U.S. 288, 307. In other words, floor statements, even though made publicly in session and thus capable of shaping the ideas and intentions of other legislators, are nonetheless minimally helpful because they give an especially minimal and speculative view of what the body intended as a whole. How, then, could the *private* communications of legislators, with people who have no public authority, shed any light whatsoever on the whole body's intent? The obvious answer is that they cannot: the "[p]rivate . . . conversations" of legislators concerning a law "have no higher standing than" legislators' testimony following a law's enactment, which *does not qualify as "legislative history." Schlothan v. Alaska*, 276 F.2d 806, 815 (9th Cir. 1960) (emphasis added). So the Narrowed Requests, which seek such private communications, would shed no light on the meaning of the law and thus cannot be said to seek relevant information.

Finally—if any question remains—it must be noted that when opinions of specific lawmakers "conflict[] with the explicit statements" of legislative history, those opinions are not even "persuasive" of legislative intent. *United States v. Wrightwood Dairy Co.*, 315 U.S. 110, 125 (1942). Therefore, if Challengers wish to use the documents sought to show that the abortion trafficking ban means something other than the meaning construed from actual legislative history, that would have no relevance. And of course, if they wish to use them to *confirm* the legislative history, they would simply be redundant to that history and irrelevant for that reason in addition to the other reasons listed above. In short, even if Challengers merely want to use NRLC as a cache of *legislators'* communications, those communications still would not be relevant since they could not add anything to the court's analysis of legislative intent.[12] In *Schlothan*, the

---

[12]And even if *that* were not the case, to the extent the Narrowed Requests seek communications from *others* in hopes of fishing up something that may be relevant, they are

court upheld summary judgment where the appellant could not provide "any *published and available* legislative notes and discourse." 276 F.2d at 815 (emphasis added). Here, the Narrowed Requests do not even seek such discourse, but only non-public communications. Such communications cannot possibly be relevant to any claims.

The Narrowed Requests therefore are not relevant to vagueness claims. And a private entity's views of a law certainly do not have anything to do with whether that law infringes on any right of travel or the First Amendment. If NRLC's documents have absolutely nothing to do with the claims and issues in the case, logically, Challengers cannot show *any* interest in them, much less satisfy their burden to show an interest going to the very core of the case.

**b. The Narrowed Requests are not the least restrictive means.**

Nor can Challengers satisfy their burden to show that the Narrowed Requests are the least restrictive means of acquiring the information sought. In addition to the problems of overbreadth discussed below, *infra* Part III, the Narrowed Requests also fall afoul of the enhanced protections applicable to non-parties against whom discovery is sought. As a leading treatise explains, non-parties are not expected "to shoulder the same types of discovery burdens as the parties and [courts] are therefore quicker to find that the burden or expense in question is undue[.]." 1 Gensler, *Federal Rules of Civil Procedure, Rules and Commentary*, Rule 45, at 1370 (2022).

Beyond this general principle, Federal Rule of Civil Procedure 45 explicitly "'requires that district courts quash subpoenas that call for privileged matter or would cause an undue burden.'" *In re Micron Tech., Inc. Sec. Litig.*, 264 F.R.D. 7, 9 (D.D.C. 2010) (quoting *Watts v.*

---

overbroad and unduly burdensome. A party must avoid imposing upon a non-party the burden of producing documents that may just as easily—and more directly—be produced by someone else, as discussed below.

**Mem. Supp. Mot. Non-Party National Right
to Life Committee, Inc., to Quash Subpoena** 15

*SEC*, 482 F.3d 501, 508 (D.C. Cir. 2007)). Thus, even if "the requested discovery is relevant," a court still must consider whether "the discovery would place an undue burden on the non-party[] [because] . . . 'parties and attorneys who issue subpoenas have an affirmative duty to prevent undue burden or expense to the persons subject to the subpoena.'" *United States ex rel. Strauser v. Stephen L. LaFrance Holdings, Inc.*, No. 20-5 (CKK), 2020 U.S. Dist. LEXIS 85015, at *4–5 (D.D.C. May 14, 2020) (quoting *Millennium TGA, Inc. v. Comcast Cable Comms.*, 286 F.R.D. 8, 11 (D.D.C. 2012)).[13]

Here, the Narrowed Requests demand information that appears to be otherwise available. In fact, the narrowed form of the Requests *highlights* this availability by focusing on documents sent to or intended for legislators. Idaho's public records law, Idaho Code §§ 74-101 through -127, permits the public to access records of the legislature, which means communications with legislators[14] should be available without any judicial compulsion whatsoever. If, for whatever

---

[13]The Fourth Circuit has provided cogent additional explanation of these protections:

> All civil discovery . . . is limited in scope . . . [and] must [] be proportional to the needs of the case. . . . Proportionality requires courts to consider, among other things, whether the burden or expense of the proposed discovery outweighs its likely benefit. . . . When discovery is sought from nonparties, however, its scope must be limited even more. Nonparties are strangers to the litigation, and since they have no dog in the fight, they have a different set of expectations from the parties themselves. Bystanders should not be drawn into the parties' dispute without some good reason, even if they have information that falls within the scope of party discovery. For example, a party's email provider might well possess emails that would be discoverable from the party herself. But unless the email provider can offer important information that cannot be obtained from the party directly, there would be no cause for a subpoena against the provider.

*Va. Dep't of Corr. v. Jordan*, 921 F.3d 180, 188-89 (4th Cir. 2019) (citing *Cusumano v. Microsoft Corp.*, 162 F.3d 708, 717 (1st Cir. 1998)) (cleaned up).

[14] Consistent with the nature of Challengers' case, the NRLC Subpoena limits its requests concerning communications with legislators to the Idaho Legislature. Ex. 1, 7.

reason, Challengers do not want to go through the process of a public records request, that simply should not be made the problem of a stranger to the case. And even if, for some reason, the public records law were not applicable here, it still makes no sense to burden a private entity when Idaho itself is the defendant. The fundamental fact is that, in accordance with the protections this Court requires for non-parties, Challengers should seek the documents from Idaho state entities before burdening a total stranger to the litigation.

## II. The Narrowed Requests are not relevant.

Equally fundamental is the fact that neither of the Narrowed Requests seeks relevant information. In all discovery, via subpoena or otherwise, the party seeking the discovery bears the initial burden of demonstrating its relevance under Rule 26 of the Federal Rules of Civil Procedure. *AF Holdings, LLC v. Doe*, 752 F.3d 990, 995 (D.C. Cir. 2014). "[N]o one would suggest that discovery should be allowed of information that has no conceivable bearing on the case." *Food Lion v. United Food & Commer. Workers Int'l Union*, 103 F.3d 1007, 1012 (D.C. Cir. 1997) (internal quotation marks and citation omitted). As discussed above, neither of the Narrowed Requests satisfies the heightened standard of relevance under the Balancing Test. However, because neither of the Narrowed Requests is relevant *at all*, they cannot even satisfy Rule 26's baseline standard.

This is not a toothless requirement. "[T]he [relevance] requirement . . . should be firmly applied, and the district courts should not neglect their power to restrict discovery . . . [and] should not hesitate to exercise appropriate control over the discovery process." *Herbert v. Lando*, 441 U.S. 153, 177 (1979). Though broad, "the relevance standard of Rule 26 is not without bite[.]" *Food Lion*, 103 F.3d at 1012. Importantly, it does not permit a party "to explore matter which does not presently appear germane on the theory that it might conceivably become so." *Id.*

at 1013 (quoted source omitted). Instead, as Federal Rule of Evidence 401 states, a fact must be

"of consequence in determining the action" in order to be relevant. Rule 26 thus limits discovery

to that which may actually have an effect on the outcome of the case. *See Food Lion*, 103 F.3d at

1014 (warning against the "menacing[]" "problems of boundless discovery without a meaningful

standard of relevance"; noting that discovery must have some substantive "nexus" to the actual

issues of the case, not just the general subject matter); *In re Clinton*, 970 F.3d 357, 366 (D.C. Cir.

2020) (discovery that "simply would have no effect on the rights of the parties" is

"inappropriate").

As explained, a private entity's communications have nothing to do with any of the issues

in this case and, indeed, even communications received by that entity from legislators are

irrelevant because such private communications are no part of legislative history and thus play no

part in judicial construction of the law. Because the Narrowed Requests do not seek relevant

information, the NRLC Subpoena should be quashed.

### III. The Narrowed Requests are overbroad.

Relatedly, the Narrowed Requests are overbroad and impose an undue burden on NRLC.

Thus, although the NRLC Subpoena should be quashed as a result of, *inter alia*, the Narrowed

Requests' total irrelevance, it should still be quashed due to overbreadth even if this Court

believes the Narrowed Requests could be relevant. Both Narrowed Requests are overbroad,

seeking "documents" or "communications" broadly relating to H.B. 242 and H.B. 98 or to the

even broader subject, "Abortion Trafficking Legislation."[15] While the requests are limited by

---

[15] The NRLC Subpoena defines Abortion Trafficking Legislation as any legislation "that purports to restrict, regulate, or criminalize adults assisting in the movement of minors or young people across city, county, or state lines for purposes of obtaining an abortion, or for purposes related to facilitating, assisting, or supporting an abortion[.]" Ex. 1, 7.

intended recipient, such broad, non-tailored requests will nonetheless undoubtedly require the production of a great deal of irrelevant documents. Because "[c]ourts tend to find document requests seeking all documents related to a claim or defense as lacking particularity," *Salas v. Facultatieve Techs. The Ams. Inc.*, No. 1:17-cv-00335-LJO-BAM, 2018 U.S. Dist. LEXIS 72426, at *10 (E.D. Cal. Apr. 30, 2018) (citing *Regan-Touhy v. Walgreen Co.*, 526 F.3d 641, 650 (10th Cir. 2008)) (internal quotation marks omitted), a request for all "documents" and "communications" concerning a topic even *more broad* than a generalized claim or defense, even if limited by intended recipient, is certainly overbroad. *E.g.*, *Buie v. District of Columbia*, 327 F.R.D. 1, 10–11 (D.D.C. 2018) (in case involving a sexual assault claim against a police officer and allegation that police department did not adequately train officers or discipline those who engaged in sexual misconduct, court found discovery request "overly broad to the extent that it s[ought] records regarding all disciplinary actions involving [police department] members with prior involvement in sexual misconduct or harassment").

The original, non-narrowed Requests suffered from immense overbreadth, and the Narrowed Requests do little to remedy this issue. While Challengers insinuate that the Narrowed Requests limit the requested information to external communications that "bear directly on [] legislative intent," Ex. 3, 1, it is plain that they do not effectuate that result. As explained above, legislators' individual, private communications cannot be used as evidence of legislative intent. *Supra* Part I.E.2.a. Even putting that fact aside, however, this problem persists. Narrowed Request 2 seeks not only documents that "were shared externally," but also documents "*intended* for legislative audiences." *Id.* (emphases altered). This covers internal drafts that were ultimately *not* sent to legislative audiences, as the Narrowing Letter's following sentence confirms when it states that the Narrowed Requests "do[] not seek internal deliberations . . . *unrelated to direct*

*legislative engagement*" (meaning that internal documents *are* sought *if* related to "direct legislative engagement"). *Id.* (emphasis added). As explained above, internal documents have no bearing on the case, so the Narrowed Requests' demand for same renders them overbroad.

Furthermore, exclusion of internal documents still would not go far in remedying the overbreadth of the Narrowed Requests. While the Narrowed Requests are framed as two requests, they actually comprise a single demand for all documents relating to a remarkably broad overarching topic: all "abortion trafficking legislation" documents in NRLC's possession that were created with the intent of communicating to legislators in the requested timeframe. *E.g.*, *Defreitas v. Tillinghast*, No. 2:12-CV-00235-JLR, 2013 U.S. Dist. LEXIS 7429, at *8 (W.D. Wash. Jan. 17, 2013) (finding request for "all communications" *between certain individuals* and *concerning a certain topic* to be overbroad). The overbreadth doctrine prohibits a party from demanding all communications with a given party that may relate in some remote way to an actual claim or issue (and certainly from demanding *internal* documents that may so relate) in hopes of then perusing the documents at its leisure in hopes of finding something relevant. Accordingly, the Narrowed Requests suffer from overbreadth both in their internal-inclusive nature and their lack of proper issue-tailoring. Both problems are fatal.

Finally, overbreadth also results from the Narrowed Requests' temporal scope, which is not appropriately limited. The Narrowed Requests seek documents from "January 1, 2021 to the present," yet even the earliest version of the abortion trafficking law at issue, H.B. 98, was not even introduced until more than two years thereafter, on February 7, 2023. Accordingly, the Narrowed Requests' arbitrary timeframe is yet another form of overbreadth. Because a party must seek to minimize the burden imposed by discovery requests, especially when a non-party carries that burden, this overbreadth is also fatal to the Narrowed Requests.

**IV. Conclusion.**

The Narrowed Requests are, like the original Requests, nothing less than a demand from NRLC's policy opponent that NRLC, a total stranger to the case, invest its time and resources to comb through documents that have not the slightest relevance to the case, and then hand those documents over to its policy opponent. As if that were not enough, they ask for documents that lie at the heart of the First Amendment's protections. And as if even both of those stunning facts were still not enough, they do so even though the documents that have anything to do with the legislators who actually drafted and passed the abortion trafficking law could easily be obtained from those same people—without litigation—and without dragging NRLC into the case in the first place. They flagrantly violate First Amendment privilege and fundamental principles of civil discovery. Accordingly, NRLC asks that this Court quash the NRLC Subpoena.

Dated: October 23, 2025                    Respectfully submitted,

/s/ James Bopp, Jr.
James Bopp, Jr. (District of D.C. Bar ID: CO0041)
Joseph D. Maughon*
**THE BOPP LAW FIRM, PC**
*The National Building*
1 South Sixth Street
Terre Haute, IN 47807-3510
Tel: (812) 232-2434
Fax: (812) 235-3685
Email: jboppjr@aol.com
        jmaughon@bopplaw.com

*Attorneys for Non-Party National Right to Life Committee, Inc.*
*\*Pro hac vice* application forthcoming

## CERTIFICATE OF SERVICE

I hereby certify that on Thursday, October 23, 2025, I electronically filed the foregoing

document and its attachments with the Clerk of the Court via email to

dcd_intake@dcd.uscourts.gov. I also certify that on that same day, I caused the foregoing

documents to be served on counsel for Plaintiffs in the underlying action Northwest Abortion

Access Fund, Lourdes Matsumoto, and Indigenous Idaho Alliance, via email by their consent at

the following addresses:

WENDY J. OLSON, Bar No. 7634
wendy.olson@stoel.com
STOEL RIVES LLP
101 S. Capitol Boulevard, Suite 1900
Boise, ID 83702
Telephone: 208.389.9000

JAMILA A. JOHNSON
jjohnson@lawyeringproject.org
THE LAWYERING PROJECT
3157 Gentilly Blvd. #2231
New Orleans, LA 70122
Telephone: 347.706.4981

WENDY S. HEIPT
wheipt@legalvoice.org
LEGAL VOICE
907 Pine Street, #500
Seattle, WA 98101
Telephone: 206.954.6798

PAIGE SUELZLE
psuelzle@lawyeringproject.org
THE LAWYERING PROJECT
2501 SW Trenton Street #1097
Seattle, WA 98106
Telephone: 347.515.6073

KELLY O'NEILL, Bar No. 9303
koneill@legalvoice.org
LEGAL VOICE
P.O. Box 50201
Boise, ID 83705
Telephone: 208.649.4942

MAREN ARMBRUST
*Practice Assistant to Wendy J. Olson*
maren.armbrust@stoel.com
STOEL RIVES LLP
101 S. Capitol Boulevard, Suite 1900
Boise, ID 83702

Date: October 23, 2025

/s/Joseph D. Maughon
Joseph D. Maughon