# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| *In re*: Subpoena Served on National Right to Life Committee, Inc. | Case No. 25-mc-159 (RJL) |
| LOURDES MATSUMOTO, NORTHWEST ABORTION ACCESS FUND, and INDIGENOUS IDAHO ALLIANCE,<br><br>Plaintiffs,<br><br>v.<br><br>RAÚL LABRADOR<br><br>Defendant. | *Underlying Action*<br>Case No. 23-cv-323-DKG (D. Idaho) |

## MEMORANDUM ORDER
January 30, 2026 [Dkt. #1, #12, #13]

Before the Court is a Motion to Quash Subpoena, ("Mot.") [Dkt. #1], filed by a non-party, the National Right to Life Committee, Inc. ("NRLC" or "petitioner"). Because NRLC has a First Amendment interest in the communications sought, which outweighs respondents' need for the documents, the Court will **GRANT** the motion.

### I.   BACKGROUND

The underlying litigation is in the United States District Court for the District of Idaho. *See Matsumoto v. Labrador*, No. 1:23-cv-323-DKG (D. Idaho filed July 11, 2023). The case involves a challenge to Idaho Code § 18-623 ("the Idaho law"), which criminalizes procuring an abortion or obtaining an abortion-inducing drug for an unemancipated minor by "recruiting, harboring, or transporting" a pregnant minor with the

1

intent to conceal the abortion from the minor's parents or guardian.[1] Plaintiffs are Lourdes Matsumoto, the Northwest Abortion Access Fund and the Indigenous Idaho Alliance (collectively "plaintiffs" or, for purposes of this motion, "respondents"), who seek to counsel pregnant minors in Idaho and help them access legal abortions in other states. The defendant is Raúl Labrador, the Attorney General for the State of Idaho. Non-party NRLC is a private organization with 50 state right-to-life affiliates that seek to advance a pro-life agenda through education and political advocacy.

Plaintiffs filed suit in July 2023, challenging the Idaho law on several grounds. Discovery is currently proceeding on plaintiffs' void-for-vagueness, interstate travel, and First Amendment claims. *Matsumoto v. Labrador*, 701 F. Supp. 3d 1069, 1076, 1078 (D. Idaho 2023). In September 2025, the NRLC received a subpoena duces tecum ("NRLC Subpoena") demanding production of certain documents, which has since been narrowed to the following operative requests:

> 1. Communications with Idaho legislators or legislative staff concerning H.B. 242 or H.B. 98, including any attachments, talking points, or materials prepared *for dissemination to* legislators; and
>
> 2. Documents created for the purpose of communicating with legislators about those "abortion trafficking" bills like H.B. 242 and H.B. 98—such as drafts of model language, position summaries, or legislative fact sheets—*to the extent such materials were shared externally or intended for legislative audiences.*

Mot. Ex. 3 [Dkt. #1-4] ("Narrowing Letter") (emphasis in original).

---

[1] The law was first introduced as Idaho House Bill 98 ("H.B. 98") and was later re-introduced as House Bill 242 ("H.B. 242").

On October 2, 2025, NRLC timely objected to the NRLC Subpoena on the basis of First Amendment privilege, relevancy, overbreadth, and undue burden. Mot. at 2. NRLC now moves this Court to quash the subpoena.[2]

## II.   LEGAL STANDARD

A district court may quash a subpoena that "requires disclosure of privileged or other protected matter." Fed. R. Civ. P. 45(d)(3)(A). When a party asserts a First Amendment privilege to resist compliance with the subpoena, it must first demonstrate that it has a First Amendment interest at stake in the discovery demanded. *In re Kincaid*, 2023 WL 5933341, at *5 (D.D.C. Aug. 9, 2023), *report and recommendation adopted*, 2023 WL 6459801 (D.D.C. Oct. 4, 2023). If the party clears this threshold, the Court applies a balancing test to weigh plaintiff's First Amendment interest against the defendant's need for the information sought. *Int'l Action Ctr. v. United States*, 207 F.R.D. 1, 4 (D.D.C. 2002).

## III.   ANALYSIS

As an initial matter, the Court finds that NRLC has made the threshold showing that it has a First Amendment interest in the communications sought. Discovery requests that seek information about past political activities and affiliations may trigger First Amendment protection. *Int'l Action Ctr. v. United States*, 207 F.R.D. 1, 3 (D.D.C. 2002). And Courts in this Circuit have held that "First Amendment interests are implicated when releasing internal and external communications could result in 'chilling the free exercise

---

[2] Respondents served a substantively identical subpoena on NRLC's Idaho affiliate, Right to Life Idaho, Inc. ("RLI"), which moved to quash. NRLC asks the Court to take judicial notice of Defendant Labrador's memorandum filed in support of RLI's motion to quash [Dkt. #12]. Respondents similarly ask the Court to take judicial notice of the Idaho district court's order granting in part and denying in part RLI's motion to quash [Dkt. #13]. The Court will **GRANT** both motions.

3

of political speech and association.'" *See, e.g., In re Kincaid*, 2023 WL 5933341, at *6. Such is the case here. The NRLC Subpoena demands the disclosure of NRLC's strategic political advocacy concerning a sensitive political issue. And the NRLC has made a sufficient showing that compliance with the subpoena is likely to chill the free exercise of political speech, association, and activity. According to the NRLC President, compliance with the subpoena would make legislators, donors, and individuals more hesitant to engage and associate with NRLC. *See* Tobias Decl. [Dkt. # 9-1] ¶¶ 8–12.[3] This, in turn, would hinder NRLC's ability to advance legislation, fundraise, attract volunteers, and otherwise carry out its mission. *Id.* Thus, NRLC has a First Amendment interest at stake.

Moving to the balancing test, the Court must weigh NRLC's First Amendment interest against respondents' need for the information. The interest in disclosure is relatively weak unless the relevant information goes to the "heart of the matter." *Black Panther Party v. Smith*, 661 F.2d 1243, 1268 (D.C. Cir. 1981), *cert. granted, judgment vacated as moot sub nom. Moore v. Black Panther Party*, 458 U.S. 1118 (1982). And even when the information sought is critical, "disclosure should be compelled only after the litigant has shown that he has exhausted every reasonable alternative source of information." *Id.*

*First*, the information sought does not go to the heart of the matter. Respondents argue that the NRLC communications are most relevant to their claim that the Idaho law

---

[3] The Court may consider the Tobias Declaration submitted with NRLC's reply brief since it relates to claims NRLC raised in its opening brief, and because it serves to rebut arguments made in respondents' opposition brief. *See Shipley v. D.C.*, 2020 WL 13669941, at *14 (D.D.C. Mar. 6, 2020), *report and recommendation adopted in part*, 2020 WL 13669870 (D.D.C. Mar. 24, 2020); *Karem v. Trump*, 404 F. Supp. 3d 203, 218 n.3 (D.D.C. 2019), *aff'd as modified*, 960 F.3d 656 (D.C. Cir. 2020).

4

violates the constitutional right to interstate travel, because a violation of that right can be demonstrated by proving that the primary objective of the law is to impede travel. Opp. [Dkt. #8] at 9 (citing *Att'y Gen. of New York v. Soto-Lopez*, 476 U.S. 898, 903 (1986)). They contend that NRLC's communications with Idaho legislators will shed light on whether the law was motivated by the desire to impede interstate travel. *Id.* But NRLC's communications with Idaho legislators regarding the Idaho law will have minimal bearing on respondents' claims. Respondents' interstate travel claim does not require a searching inquiry to discover the primary objective underpinning the law. As petitioners explain, the law "*on its face* prohibits the interstate travel of explicitly described individuals for explicitly described purposes." Reply [Dkt. #9] at 7. Unlike the equal protection and redistricting cases that respondents rely on, *see* Opp. at 8–10, this is not a case that is likely to require a probe into whether the legislators had some hidden discriminatory motive, because the Idaho law *facially* prohibits interstate travel for some purposes.

What's more, as the Supreme Court has counseled, arguments based on alleged legislative motives have long been disfavored. *Dobbs v. Jackson Women's Health Org.*, 597 U.S. 215, 253 (2022). "Even when an argument about legislative motive is backed by statements made by legislators who voted for the law, [the Court] ha[s] been reluctant to attribute those motives to the legislative body as a whole." *Id.* 253–54. And statements

5

made by *non*-legislators, like the NRLC, are even less probative. *See id.* at 254. Thus, petitioners' interest in disclosure is relatively weak.[4]

*Second*, respondents have not made reasonable attempts to obtain the information through alternative sources. Indeed, respondents do not deny that they have made *no* attempt to obtain the documents through Idaho's public records requests process. Opp. at 13–14. Instead, they argue that the NRLC Subpoena is more "efficient, cost-effective, and reliable" than making public records requests. *Id.* at 11. But even if respondents are correct that obtaining the documents through the public records request process would be more time-intensive or otherwise burdensome, they have failed to show that they have "exhausted every reasonable alternative." *Black Panther Party v. Smith*, 661 F.2d 1243, 1268 (D.C. Cir. 1981). As petitioners point out, Idaho legislators have an existing statutory duty to respond to public records requests, making it difficult to justify imposing a judicially-compelled burden on a non-party. Reply at 9.

Therefore, the balancing test weighs in favor of quashing the subpoena.[5]

---

[4] Because the Court finds that the documents sought by the NRLC Subpoena are not relevant, the NRLC Subpoena requests are necessarily overbroad and impose an undue burden, as they are not proportional to the needs of the case.

[5] The parties dispute whether and to what extent the NRLC Subpoena seeks internal materials. The Court finds that the language of the narrowed subpoena requests could be construed to encompass both internal and external materials. While NRLC's First Amendment interest is *greater* with respect to internal communications, the balancing test still weighs against disclosure of both internal and external communications, given the limited relevance of NRLC's documents and the availability of the public records request alternative.

## IV.    CONCLUSION

Accordingly, for the reasons set forth above, it is hereby

**ORDERED** that the two pending [Dkt. #12, #13] Motions to Take Judicial Notice are **GRANTED;** and it is

**FURTHER ORDERED** that NRLC's [Dkt. #1] Motion to Quash is **GRANTED.**

**SO ORDERED.**

_____
RICHARD J. LEON
United States District Judge